## CASE NO. 2020-4016

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

## DR. WILLIAM E. NITCH

Plaintiff-Appellant

v.

## EASTERN GATEWAY COMMUNITY COLLEGE

Defendant-Appellee

Appeal From United States District Court for the Northern District of Ohio,
Eastern Division Case No. 4:19CV2490

---

## BRIEF OF APPELLANT

---

Ned C. Gold, Jr. (#0018306)
The Gold Law Firm
7011 East Market Street
Warren, Ohio 44484
Telephone:　(330) 856-6888 (Bus.)
　　　　　　(330) 727-9162 (Cell)
Facsimile:　(330) 856-1565
Email:　　　corkadoo@aol.com
Attorney for Plaintiff-Appellant

# TABLE OF CONTENTS

**TABLE OF AUTHORITY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

STATEMENT IN SUPPORT OF ORAL ARGUMENT. . . . . . . . . . .    5

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . .    6

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . .    9

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . .    12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

    *1. The Trial Court Should Have Equitably Tolled the*
      *Running of the Ninety Day Limitations Period Applicable*
      *in ADEA Cases.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

    *2. A Contract Implied in Law Tolling the Statute of Limitations*
      *Existed Between Dr. Nitch and EGCC.* . . . . . . . . . . . . . . . . . . .    19

    *3. The Purposes of the ADEA Permit the Application of a Three Year*
      *Statute of Limitations in this Case.* . . . . . . . . . . . . . . . . . . . . . . .    21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    28

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS.    29

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . .    30

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . .    30

Addendum *Byard v. Vorys, M.D.* (Unpublished Opinion) . . . . . . . . . . . . . . .    31

# TABLE OF AUTHORITY

I.    Statutes and Rules

    Rule 12(c), Federal Rules of Civil Procedure. . . . . . . .    14

    Rule 41(a), Federal Rules of Civil Procedure. . . . . . .    20

    29 U.S.C. §626(b). . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

    29 U.S.C. §255. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

    29 U.S.C. §626(e). . . . . . . . . . . . . . . . . . . . . . . . . . .    24

    29 U.S.C. §216. . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25


II.    Cases

***Brent v. Wayne County Department of Human Services***,
    901 F.3d 656, 695 (6th Cir. 2018). . . . . . . . . . . . . . . . . . . . . .    14

***Byard v. Vorys, M.D.***, 870 F.2d 657 (6th Cir. 1989). . . . . . . . . . . . . . .    26

***California Public Employees' Retirement System v.***
    ***ANZ Securities, Inc.***, _____ U.S. _____; 137 S.Ct 2042 (2017). .    18

***Credit Suisse Securities (USA) LLC. v. Simmonds***, 506 U.S.
    221 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

***CTS Corporation v. Waldburg***, 573 U.S. 1, (2014). . . . . . . . . . . . . . .    19

***Davis v. Michigan Department of the Treasury***, 489 U.S.
    803 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

***Federal Deposit Insurance Corporation v. New Hampshire***

*Insurance Company*, 953 F.2d 478 (9th Cir. 1991). . . . . . . . . . .    21

**Federal Deposit Insurance Corporation v. Petersen**, 770 F.2d
141 (10th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

*Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722
(6th Cir 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Fust v. Arnar-Stone Laboratories*, 736 F.2d 1098,1100 (5th Cir. 1984). .    21

**Gabelli v. Securities and Exchange Commission**, 568 U.S.
442, 448 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

**Graham-Humphries v. Memphis Brooks Museum of the Arts, Inc.**,
209 F.3d 552, 561 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*Hart v. J.T. Baker Chemical Company*, 598 F.2d 829 (3rd Cir. 1979). . . .    15

*Julian v. City of Houston, Texas*, 314 F.3d 721 (5th Cir. 2002). . . . . . . . .    25

*Leake v. University of Cincinnati*, 605 F.2d 255 (6th Cir. 1979). . . . . . . .    15

*Legros v. Tarr*, 44 Ohio St.3d 1 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . .    20

*Mwasaru v. Napolitano*, 619 F.3d 545 (6th Cir. 2010). . . . . . . . . . . . . . .    24

**Oshiver v. Levin, Fishbein, Sedran & Berman**, 38 F.3d 1380
(3rd Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

*Siefert v. Hamilton County*, 951 F.3d 753, 759 (6th Cir. 2020). . . . . . . . . .    14

*Tritt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998). . . . . . . . . . . . . . .    15

*Weaver v. Ault*, 859 F.Supp. 256 (N.D. Texas 1993). . . . . . . . . . . . . . . . .    25

**Zappone v. United States of America**, 870 F.3d 551 (6th Cir. 2017). . . . . .    16

**ADDENDUM – Case of *Byard v. Vorys*** . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument.  Plaintiff-Appellant believes that oral argument will provide a valuable opportunity for the panel assigned to this appeal to ask questions relating to points that may not have been made in the briefs of the parties and to clarify points made in those briefs.

## JURISDICTIONAL STATEMENT

The trial court granted defendant-appellee's Motion for Judgment on the Pleadings on August 30, 2020. Plaintiff-Appellant filed a timely appeal to this Honorable Court on September 24, 2020. This Honorable Court has subject matter over this appeal pursuant to 28 U.S.C. §1292.

The standard of review is de novo. In conducting its de novo review, this Honorable Court must put itself in the position of the district court and independently review and decide the issues of law presented by plaintiff-appellant. The decision of the District Court is irrelevant to this Honorable Court's review.

ISSUES PRESENTED

1. Should the statute of limitations have been equitably tolled for the period between the date on which plaintiff-appellant filed his first lawsuit and October 28 2019, the date on which plaintiff-appellant filed his second lawsuit?

2. Was there a contract implied in law between the parties that tolled the running of the statute of limitations for the period between the date on which plaintiff-appellant filed his first lawsuit and October 28, 2019, the date on which plaintiff-appellant filed his second lawsuit?

3. Does an alternative statute of limitations of three years apply to this case?

STATEMENT OF THE CASE

Plaintiff-Appellant Dr. William E. Nitch ("Dr. Nitch") filed his Complaint alleging a violation of the Age Discrimination in Employment Act ("ADEA") with the district court on October 28, 2019 (R.1. Complaint; Page ID# 1-16).  Defendant-Appellee Eastern Gateway Community College ("EGCC") answered Dr. Nitch's Complaint on December 27, 2019 (R.8. Answer; Page ID# 52-58).  On that same day, EGCC filed a Motion for Judgment on the Pleadings (R.9. Motion for Judgment on the Pleadings; Page ID# 59-71).  Dr. Nitch responded to EGCC's dispositive motion on January 27, 2020 (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings; Page ID# 77-94).  EGCC replied to Dr. Nitch's Response on February 10, 2020 (R.12.  Reply in Support of Motion for Judgment on the Pleadings; Page ID# 95-107).

The district court issued a memorandum on August 31, 2020 (R.13. Memorandum of Opinion and Order; Page ID# 108-116).  In that memorandum, the district court granted EGCC's Motion for Judgment on the Pleadings.  The district court issued an order on August 31, 2020 dismissing Dr. Nitch's federal claims with prejudice.  The district court declined to assume jurisdiction over Dr. Nitch's state

claim and dismissed those state claims without prejudice (R.14. Judgment Entry; Page ID# 117).  Dr. Nitch filed a timely appeal to this Honorable Court on September 24, 2020 (R.15. Notice of Appeal; Page ID# 118).

## STATEMENT OF THE FACTS

The source of facts pertinent to this appeal is the affidavit of Ned C. Gold, Jr., Esq. that was attached to Dr. Nitch's response to EGCC's Motion for Judgment on the Pleadings (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1; Page ID# 91-94).  Dr. Nitch filed his initial lawsuit Case No. on July 27, 2018.  This Honorable Court held a telephonic Case Management Conference ("CMC") in Dr. Nitch's first case on October 15, 2018.  On October 16, 2018, this Honorable Court entered a Case Management Plan/Order.  That Order set a discovery cut-off date of April 15, 2019 and a deadline of May 31, 2019 for filing dispositive motions.

Dr. Nitch served interrogatories, document requests, and requests for admissions on EGCC on December 28, 2018 (R. 11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶3; Page ID# 91-92).  In the spirit of collegiality and cooperation between attorneys, the undersigned consented to multiple requests by counsel for EGCC for additional time to respond to the discovery requests served by Dr. Nitch (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶3; Page ID# 91-92).

The undersigned, still acting in the spirit of cooperation and collegiality, agreed to produce Dr. Nitch for deposition on April 23, 2019. The date for Dr. Nitch's deposition was eight days after the discovery cut-off date previously set by the district court. The undersigned agreed to permit EGCC to depose Dr. Nitch despite the fact that EGCC had not responded to Dr. Nitch's December 28, 2018 discovery requests (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶4; Page ID# 92). As of May 17, 2019, only two weeks before the dispositive motion deadline, EGCC had not responded to Dr. Nitch's discovery requests. Finally, on May 24, 2019, EGCC served responses to Dr. Nitch's written discovery requests. Those responses, in addition to being woefully late, were vague and incomplete (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶5; Page ID# 92). EGCC's late, insufficient discovery responses did not comport with either the letter or the spirit of the provisions of the Federal Rules of Civil Procedure that govern the discovery process. Clearly, EGCC and its counsel did not reciprocate the courtesy and collegiality extended to them by the undersigned (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶5; Page ID# 92).

By unduly delaying its discovery responses, and by failing to provide Dr. Nitch with appropriate discovery, EGCC deprived Dr. Nitch of the opportunity to effectively take depositions and conduct follow-up discovery essential to responding

10

to the dispositive motion (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶5; Page ID# 92). The undersigned's acts of professional courtesy to defense counsel resulted in Dr. Nitch being placed in an untenable position. The undersigned concluded that it was necessary to voluntarily dismiss Dr. Nitch's first lawsuit without prejudice and refile. The undersigned communicated that intention to opposing counsel (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶6; Page ID# 92). This Honorable Court dismissed Dr. Nitch's first lawsuit without prejudice on June 20, 2019. Dr. Nitch refiled his ADEA suit against EGCC on October 28, 2019, more than ninety days after he had received a Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC").

## SUMMARY OF THE ARGUMENT

The circumstances of this case justify equitably tolling the statute of limitations for the period between the date on which Dr. Nitch filed his first lawsuit and October 28, 2019, the date on which Dr. Nitch filed his second lawsuit.  Dr. Nitch satisfies all of the generally accepted factors that determine whether to equitably toll a statute of limitations.  EGCC's failure to fully and timely respond to Dr. Nitch's discovery requests is another consideration militating toward equitable tolling.  The ADEA is a remedial statute that should be broadly construed and the statute of limitations is a procedural matter that should be construed in such a way as to permit, rather than deny, plaintiffs the right to have their cases decided on their merits.  The district court's analysis of equitable tolling in this case was unduly narrow.

Rule 41(a), Federal Rules of Civil Procedure, requires consent by the defendant in order for a voluntary dismissal of an action to be without prejudice. EGCC's dilatory actions in the first lawsuit caused Dr. Nitch to voluntarily dismiss the first lawsuit.  EGCC by stipulating to a "without prejudice" dismissal recognized

that Dr. Nitch intended to refile his ADEA lawsuit. EGCC did not suffer any prejudice due to the delay attributable to the voluntary dismissal of the first lawsuit. The equities present in this case justify the conclusion that there was a contract implied in law between Dr. Nitch and EGCC to toll the running of the statute of limitations during the period from the date on which Dr. Nitch filed his first action and October 28, 2019, the date on which Dr. Nitch filed his second lawsuit.

The ADEA expressly borrows procedural provisions contained in the Fair Labor Standards Act ("FLSA"). A statute of limitations is procedural, not substantive. A reasonable interpretation of the ADEA supports the conclusion that the FLSA three year statute of limitation is one of the procedural provisions borrowed by the ADEA. Dr. Nitch filed his second lawsuit within a three year period. The trial court did not properly interpret the terms of the ADEA in light of the requirement of a liberal construction and erroneously rejected Dr. Nitch's argument that an alternative three year statute of limitations applied to this case. The district court did not give Dr. Nitch the benefit of all presumptions and did not resolve all doubts in Dr. Nitch's favor.

ARGUMENT

*1. The Trial Court Should Have Equitably Tolled the Running of the Ninety*

*Day Limitations Period Applicable in ADEA Cases.*

The standard of review in cases decided on a Motion for Judgment on the Pleadings made pursuant to Rule 12(c), Federal Rules of Civil Procedure is de novo. ***Fritz v. Charter Township of Comstock***, 592 F.3d 718, 722 (6th Cir 2010); ***Brent v. Wayne County Department of Human Services***, 901 F.3d 656, 695 (6th Cir. 2018) In conducting a de novo review this Honorable Court must put itself in the same position as the district court. ***Siefert v. Hamilton County***, 951 F.3d 753, 759 (6th Cir. 2020)  With those principles in mind, Dr. Nitch presents much the same arguments he presented to the district court to this Honorable Court.  Dr. Nitch believes that this Honorable Court, upon completion of a de novo review, will see the merit in each of his arguments.

The time periods for filing charges and/or lawsuits set forth in federal anti-discrimination statutes are not jurisdictional.  The district court could have, and should have, tolled that time requirement on equitable grounds.

> ". . . the mere fact that the federal statute providing
> substantive liability also sets time limitation upon the
> institution of suit does not restrict the power of the federal
> courts to hold that the statute of limitations is tolled under
> certain circumstances not inconsistent with the legislative
> purposes." (citations omitted)   *Leake v. University of
> Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979)

One of the cases cited in *Leake* was *Hart v. J.T. Baker Chemical Company*, 598 F.2d 829 (3rd Cir. 1979)  The appellate court in *Hart* characterized federal anti-discrimination laws as being remedial statutes which should be liberally construed. That appellate court also opined that the ADEA was humanitarian legislation that should be applied "in a humane and commonsensical manner."  *Id*. at 831

Dr. Nitch is entitled to the benefit of the equitable tolling doctrine.  When the ADEA time limits invoked by EGCC in its Motion for Judgment on the Pleadings are equitably tolled the present action is timely.  The applicability of equitable tolling "must necessarily be determined on a case-by-case basis." *Tritt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)

This Honorable Court has identified five factors to be used by trial courts when deciding whether to use equitable tolling in a given case.  This Honorable Court has cautioned trial courts that those five factors are neither comprehensive nor

material in all cases.  ***Graham-Humphries v. Memphis Brooks Museum of the Arts, Inc.***, 209 F.3d 552, 561 (6th Cir. 2000)  The five historical factors are:

1. the plaintiff's lack of notice of the filing requirements;

2. the plaintiff's lack of constructive knowledge of the filing requirements;

3. the plaintiff's diligence in pursuing his or her rights;

4. the absence of prejudice to the defendant; and

5. the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

***Zappone v. United States of America***, 870 F.3d 551, 556 (6th Cir. 2017)  Dr. Nitch satisfies all five of those historical factors.

Dr. Nitch and the undersigned believed, when the first lawsuit was voluntarily dismissed without prejudice, that the Ohio Savings Statute, Ohio Revised Code §2309.19, gave them the right to refile within one year (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶6; Page ID# 92-93).  For an attorney who has practiced primarily in Ohio state courts for many years that belief was entirely understandable and reasonable.  Factors 1, 2, and 5 seek a rational explanation for the late filing as a condition precedent to equitable tolling.  The circumstances leading to the voluntary dismissal of his first case and the filing of this suit demonstrate that Dr. Nitch had a rational reason for not filing

within the ninety day period.  Dr. Nitch was diligent in pursuing his rights.  Dr. Nitch timely filed his first lawsuit against EGCC.  During the pendency of that first lawsuit, Dr. Nitch actively sought discovery from EGCC only to be stifled by the – shall we say - less than collegial conduct of opposing counsel.  Dr. Nitch satisfies factors. 1, 2, 3, and 5.

With regard to factor no. 4, prejudice to EGCC, the undersigned refers this Honorable Court to a discussion between counsel pertaining to the for Dr. Nitch to voluntarily dismiss the first lawsuit.  That discussion included comments about the relationship between the discovery delays and Dr. Nitch's inability to effectively respond to the summary judgment motion (R.11. Memorandum in Response to Defendant's Motion for Judgment on the Pleadings, Exh. 1 ¶5; Page ID# 92).  That discussion is significant for two reasons.  First, EGCC knew that the present lawsuit was coming.   Second, that discussion contradicts EGCC's attempts, through statements made in its dispositive motion (R.12. Reply in Support of Motion for Judgment on the Pleadings, p. 4; Page ID# 98), to portray Dr. Nitch as being unduly dilatory.

A primary purpose of statutes of limitations is providing fairness to defendants by protecting them from stale or unduly delayed claims.  ***Credit Suisse Securities (USA) LLC. v. Simmonds***, 506 U.S. 221, 227 (2012)  Dr. Nitch did not "unduly" delay pursuing his age discrimination claim against EGCC.  Equitable tolling would

be fair to Dr. Nitch, and would not compromise the underlying purpose of a statute of limitations.  The most common justification for eschewing strict and literal application of statutes of limitations is that affirmative acts of a defendant have impeded suit  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3rd Cir. 1994)

The undersigned's affidavit reflects that EGCC and its counsel through affirmative acts of both omission and commission impeded Dr. Nitch's ability to prosecute his first lawsuit (R.11. Memorandum in Response to Motion for Judgment on the Pleadings, Exh.1 ¶5, Page ID# 92)  Equitably tolling the statute of limitations in this action would be a fair, "humane and commonsensical" way of abating the negative consequences that EGCC's questionable actions in the first lawsuit created for Dr. Nitch.  Equitable tolling in this case is also consistent with the obligation placed on courts to liberally construe the ADEA to effectuate the purposes of that remedial law.

The trial court's approach to equitable tolling  (R.13: Memorandum of Opinion and Order p. 4-7; Page ID# 111-114) is unduly strict and narrow.  That harshness and narrowness is not in keeping with the purposes of the statute of limitations, and of remedial laws like the ADEA.  Statutes of limitations are designed to encourage plaintiffs to diligently pursue their claims.  *California Public Employees' Retirement System v. ANZ Securities, Inc.*, ____ U.S. ____; 137 S.Ct

18

2042, 2049 (2017)  Statutes of limitations are intended to avoid permitting claims "to slumber until evidence has been lost, memories have faded and witnesses have disappeared." *Gabelli v. Securities and Exchange Commission*, 568 U.S. 442, 448 (2013)  Strictly applying the statute of limitations in this case does not further any of those ends.

Equitable tolling "pauses" the statute of limitations in cases where "the restriction imposed by the statute of limitations does not further the statute's purpose. *CTS Corporation v. Waldburg*, 573 U.S. 1, 10 (2014)  The applicable statute of limitations in an ADEA case is quite short; ninety days after the administrative process ends.  Dr. Nitch acted within that ninety day period when he filed his first lawsuit against EGCC.  Viewing all of the circumstances favorably to Dr. Nitch justifies the conclusion that the 90 day filing period should be equitably tolled for the period from the date on which Dr. Nitch filed his first lawsuit to the October 28, 2019, the date he filed this lawsuit.  Given the facts of this lawsuit the interest of Dr. Nitch being able to present the merits of his ADEA should be paramount.

### 2.  *A Contract Implied in Law Tolling the Statute of Limitations Existed Between Dr. Nitch and EGCC.*

Parties can agree to toll the running of the statute of limitations. The circumstances surrounding the agreement between Dr. Nitch and EGCC to voluntarily dismiss the first lawsuit constituted a contract implied in law to toll the statute of limitations from the time Dr. Nitch filed his first lawsuit until October 28, 2019, that date on which Dr. Nitch filed his second lawsuit. *EGCC expressly agreed to permit Dr. Nitch to voluntarily dismiss the first action "without prejudice."* Federal Civil Rule 41(a) permits a plaintiff to voluntarily dismiss an action without prejudice only if that plaintiff obtains the express consent of the defendant.

Dr. Nitch and EGCC dismissed the first action by stipulation. The stipulation constitutes a specific agreement by EGCC for the dismissal to be without prejudice. That fact and the fact that EGCC's dilatory conduct was the reason for the voluntary dismissal created equities sufficient to form an agreement implied in law between Dr. Nitch and EGCC tolling the applicable statute of limitations. A contract implied in law arises in situations where equity and justice require that one party not retain benefits at the expense of the other party. *Legros v. Tarr*, 44 Ohio St.3d 1, 7 (1989)

By stipulating to a "without prejudice" dismissal, EGCC acknowledged that fact that Dr. Nitch intended to refile this case. The equitable and just significance of EGCC's consent to dismissal without prejudice is heightened by the role EGCC played in placing Dr. Nitch in the position where he had no choice other than voluntarily dismissing the first lawsuit. A de novo review of the record before the

district court in this case should culminate with the conclusion there was a contract implied in law tolling the statute of limitations.  Equity and justice can be achieved by enforcing that contract implied in law and restoring Dr. Nitch's refiled suit to the district court's active docket.

3. *The Purposes of the ADEA Permit the Application of a Three Year Statute of Limitations in this Case.*

A statute of limitations is procedural, not substantive.  ***Federal Deposit Insurance Corporation v. New Hampshire Insurance Company***, 953 F.2d 478, 487 (9th Cir. 1991); ***Federal Deposit Insurance Corporation v. Petersen***, 770 F.2d 141, 142 (10th Cir. 1985); ***Fust v. Arnar-Stone Laboratories***, 736 F.2d 1098,1100 (5th Cir. 1984)  That distinction is important in light of the wording of 29 U.S.C. §626(b).  That ADEA provision, provides in relevant part:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b) [29 U.S.C. §211(b)], 216 [29 U.S.C. §216] (except for subsection (a) thereof) and 217 [29 U.S.C. §217] of this title, and subsection  (c) of this section [29 U.S.C. §626(c)].

The statutes cited in the portion of 29 U.S.C. §626(b) quoted above are all sections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 et seq.

The clear language of 29 U.S.C. §626(b) mandates that trial courts refer to provisions of the FLSA in order to identify procedures applicable to ADEA lawsuits. One of those procedures is the applicable statute of limitations. The FLSA contains a three year statute of limitations for intentional violations. That statute of limitations is found at 29 U.S.C. §255 which provides in relevant part:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.], the Walsh-Healy Act, or the Bacon-Davis Act-
>
> (a) if the cause of action accrues on or after May 14, 1947- may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;

Dr. Nitch respectfully submits that since 29 U.S.C. §255 has been absorbed into the ADEA through 29 U.S.C. §626(b), any instance of age discrimination by EGCC that occurred on or after October 28, 2016 remained actionable at the time Dr. Nitch filed this action.

The last discriminatory act described in Dr. Nitch's Complaint involved the job title "Workplace Development Director" (R.1. Complaint ¶9; Page ID# 4). EGCC posted that job for the first time on June 8, 2016. Dr. Nitch applied for that position on June 12, 2016. On August 8, 2016, Dr. Nitch discovered that EGCC had selected a man named Galden for that position. Mr. Galden left that job on August 17, 2017. EGCC posted that position for a second time on August 25, 2017, and Dr. Nitch applied for that job again on August 30, 2017. Dr. Nitch was never told about the disposition of the second application. The timeline for "Workplace Development Director" supports the conclusion that discriminatory conduct occurred on or after August 30, 2017 which was prior to the expiration of the three year ADEA statute of limitation applicable to intentional acts of discrimination that the ADEA borrowed from the FLSA.

Originally, the United States Department of Labor ("DOL"), not the EEOC, administered the ADEA. At its inception, the ADEA did not require a claimant to obtain administrative permission (i.e. a Notice of Right-to-Sue) before filing an age discrimination lawsuit. Initially, the ADEA permitted a claimant to file a lawsuit any time after sixty days had passed from the filing of an age discrimination charge with the DOL. In the late 1970s, an executive order transferred administrative oversight of the ADEA from the DOL to the EEOC. That executive order did not change anything substantive about the ADEA. Despite the transfer of administrative

responsibility to the EEOC, an ADEA claimant still did not need to secure a Right to Sue letter before taking his or her age discrimination claim to court.

The requirement of obtaining a Notice of Right-to-Sue from the EEOC before filing a lawsuit in a case subject to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq. ("Title VII") prevents a claimant from waiting indefinitely before suing the offending employer. The Notice of Right-to-Sue requirement creates an endpoint to the administrative process prescribed by Title VII. From the time Congress passed the ADEA, the life of the remedial rights conferred by it has had an endpoint; the three year statute of limitations borrowed from the FLSA. Prior to 1991, in addition to the language of 29 U.S.C. §626(b) which adopted the "procedures" specified in the FLSA, the ADEA, at 29 U.S.C. §626(e), expressly stated that 29 U.S.C. §255 applied to ADEA claims.

Congress amended the ADEA in 1991. The 1991 amendments included a revision of 29 U.S.C. §626(e). Now, 29 U.S.C. §626(e) reads as follows:

> Section 259 of this title [29 U.S.C. §259] shall apply to actions under this chapter. If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title [29 U.S.C. §630(a)] within 90 days after the date of the receipt of such notice.

By virtue of the language of 29 U.S.C. §626(b) the FLSA three year statute of limitations remains a part of the ADEA.  A fundamental canon of statutory construction dictates that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Department of the Treasury*, 489 U.S. 803, 809 (1989); *Mwasaru v. Napolitano*, 619 F.3d 545**,** 549 (6th Cir. 2010)  This Honorable Court must harmonize 29 U.S.C. §626(b) with 29 U.S.C. §626(e).

This Honorable Court must accept and honor the language that Congress chose to include in the ADEA as 29 U.S.C. §626(b).  This Honorable Court must conclude that, in light of that language, ADEA lawsuits are still subject to the statute of limitations that applies to suits filed pursuant to the FLSA.  In constructing 29 U.S.C. §626(b) Congress specifically excepted a portion of 29 U.S.C. §216.  Congress certainly could have expressly excluded the statute of limitations from the FLSA "procedures" borrowed by the ADEA.  Congress did not opt to expressly exclude that FLSA procedure in the 1991 amendments.

The amended U.S.C. §626(e) states that an ADEA claimant "may" file suit within the ninety day period.  Congress' election to use permissive language implies that other time periods for filing ADEA lawsuits exist.  One such alternative, available to ADEA claimants but not available to Title VII claimants, is that whether

or not the ADEA claimant has received a ninety day notice he or she can file suit after sixty days have passed from the filing of an administrative charge.  See ***Julian v. City of Houston, Texas***, 314 F.3d 721, 726 (5th Cir. 2002); ***Weaver v. Ault***, 859 F.Supp. 256, 258 (N.D. Texas 1993)  The existence of that alternative filing period prior to receipt of the Notice of Right-to-Sue proves that the ninety day period, for ADEA purposes, is not exclusive.

A second alternative period for filing an ADEA action after expiration of the ninety days also exists; the "borrowed" three year FLSA statute of limitations.  The ultimate termination of the right to file an ADEA lawsuit is three years after an intentional discriminatory action takes place.  Dr. Nitch's interpretation of the ADEA comports with the canons of statutory construction.   Dr. Nitch's interpretation also comports with the principles that the ADEA is a remedial law that must be liberally construed.  A court confronted with a statute of limitations issue must abide by the maxim that "every reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court."  ***Byard v. Vorys, M.D.***, 870 F.2d 657 (6th Cir. 1989) (Unpublished. Per applicable local rules and internal operating procedures, a copy of the ***Byard*** decision is attached hereto as an addendum to this Brief of Appellant.)

The district court did not carefully analyze Dr. Nitch's alternative statute of limitations argument.  The district court devoted less than one full page of its

Opinion to Dr. Nitch's alternative statute of limitations argument (R.13. Memorandum of Opinion and Order p. 7-8; Page ID# 114-115) The essence of the district court's basis for rejecting Dr. Nitch's alternative statute of limitations argument is that "it makes little sense to incorporate a limitations period from a completely different statute when the statute at issue itself provides a limitations period" (R.13. Memorandum of Opinion and Order p. 8; Page ID# 115). The district court did not honor the principle that every presumption and resolve every doubt in favoring of affording, rather than denying, Dr. Nitch the opportunity to present his case on the merits. The district court's decision ignores the history of the ADEA, *Supra. p. 23-24* Dr. Nitch respectfully submits that a de novo review by this Honorable Court will validate Dr. Nitch's alternative statute of limitations argument.

CONCLUSION

For the reasons set forth herein, this Honorable Court should reverse the decision of the trial court granting EGCC judgment in its favor on the pleadings, and remand this case to the district court for full proceedings on the merits.

Respectfully Submitted

s/Ned C. Gold, Jr.
Ned C. Gold, Jr.(#0018306)
The Gold Law Firm
7011 East Market Street
Warren, Ohio 44484
Telephone:   (330) 856-6888 (Bus.)
                   (330-727-9162 (Cell)
Facsimile:   (330) 856-7550
Email:        corkadoo@aol.com
Attorney for Plaintiff-Appellant

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| **Description of Document** | **Record Entry Number** | **Page ID#** |
|---|---|---|
| Complaint | 1 | 1-16 |
| Answer to Complaint | 8 | 51-58 |
| Motion for Judgment on the Pleadings | 9 | 59-71 |
| Memorandum in Response to Plaintiff's Motion for Judgment on the Pleadings | 11 | 77-94 |
| Reply in Support of Motion for Judgment on the Pleadings | 12 | 95-107 |
| Memorandum of Opinion and Order | 13 | 108-116 |
| Judgment Entry | 14 | 117 |
| Notice of Appeal | 15 | 118 |

CERTIFICATE OF COMPLIANCE

The undersigned, attorney for appellants, certifies that this Brief of Appellant complies with the type-volume limitations set forth in the Federal Rules of Appellate Procedure in that said Brief of Appellant contains 6354 words.

s/Ned C. Gold, Jr.
Ned C. Gold, Jr.
Attorney for Plaintiff-Appellant

CERTIFICATE OF SERVICE

The foregoing  Brief of Appellant was filed electronically through the Court's ECF system on the 28th day of December 2020.  Notice of this filing will be sent to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's system

s/Ned C. Gold, Jr.
Ned C. Gold, Jr.
Attorney for Plaintiff-Appellant

ADDENDUM TO APPELLANT'S BRIEF

The unpublished case of

. ***Byard v. Vorys*, 870 F.2d 657 (6th Cir 1989), 1989 U.S. App. LEXIS 2731**

United States Court of Appeals for the Sixth Circuit

March 7, 1989, Filed

Nos. 88-3345, 88-3706

# Reporter

**1989 U.S. App. LEXIS 2731 \*** | 870 F.2d 657

KAREN BYARD, BRIAN L. BYARD, Plaintiffs-Appellants, v. NICHOLAS VORYS, M.D., INFERTILITY AND GYNECOLOGY, INC., Defendants-Appellees, ST. ANTHONY MEDICAL CENTER, Defendant

## Notice:

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON THE PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION.

## Prior History:

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

# Core Terms

notice, statute of limitations, district court, statutory notice, malpractice, appellants'

# Case Summary

## Procedural Posture

Appellants, patient and her husband, appealed a judgment of the United States District Court for the Southern District of Ohio that dismissed under Fed. R. Civ. P. 12(b)(6) their medical malpractice action against appellees, doctor, medical center, and affiliated corporation. They contended that it was error to hold that the action was time-barred under the Ohio medical malpractice statute of limitations, Ohio Rev. Code Ann. § 2305.11.

## Overview

The patient developed complications after a medical procedure. The patient and her husband hired an attorney who sent a letter to the doctor, which "advised" the doctor that the attorney had been hired to pursue a medical negligence "case." The patient and husband hired a different attorney who sent a second letter stating that the patient was contemplating filing a malpractice "action" against the doctor concerning his services, that the letter served as "notice" under Ohio Rev. Code Ann. § 2305.11(A), and that § 2305.11(A) gave them 180 more days to file an action. The patient and husband later filed this action. The court reversed the district court's dismissal and remanded the case. Because Ohio Rev. Code Ann. § 1.11 supported liberal construction of Ohio Rev. Code Ann. § 2305.11, the court found that the first letter was only a letter of representation. The first letter was sent only six and a half months after the action accrued and would have only served to extend the year limitations period two weeks. It was the second letter that extended the period under Ohio Rev. Code Ann. § 2305.11(A) by giving statutory notice. The complaint, therefore, was not time-barred.

## Outcome

The court reversed the judgment that dismissed the patient and husband's medical malpractice action that was filed against the doctor, the medical center, and the affiliated corporation. The court remanded the action.

# ▼LexisNexis® Headnotes

- Governments > Legislation > Statute of Limitations > Extensions & Revivals
- Torts > Procedural Matters > Statute of Limitations > General Overview

View more legal topics

*HN1* ⬇ **Statute of Limitations, Extensions & Revivals**

Ohio Rev. Code Ann. § 2305.11 allows for an extension of the limitation period by giving notice of

consideration of an action. Ohio Rev. Code Ann. § 2305.11(A) reads as follows: If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within 180 days after that notice is given. Ohio Rev. Code. Ann. § 2305.11(A). 🔍
More like this Headnote
*Shepardize - Narrow by this Headnote* (0)

- Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine
View more legal topics
*HN2* 📥 **Federal & State Interrelationships, Erie Doctrine**
In diversity actions, a court's responsibility is to determine and apply the law of the forum state. If the law of that state on the subject has not been clearly delineated, it is the court's duty to forecast as best it can from available sources what the supreme court of the state would do if presented with the same issue. 🔍More like this Headnote
*Shepardize - Narrow by this Headnote* (0)

- Civil Procedure > ... > Affirmative Defenses > Statute of Limitations > Statutory Construction
- Governments > Legislation > Statute of Limitations > General Overview
View more legal topics
*HN3* 📥 **Statute of Limitations, Statutory Construction**
Ohio law provides that remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. Ohio Rev. Code Ann. § 1.11 The Ohio Supreme Court holds that statutes of limitations are remedial in nature. A statute of limitation is remedial in nature and is to be given a liberal construction to permit the deciding of cases upon their merits. Ohio Rev. Code Ann. § 1.11. The liberal construction of a statute requires that every reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court. 🔍More like this Headnote
*Shepardize - Narrow by this Headnote* (0)

- Civil Procedure > ... > Pleadings > Service of Process > General Overview
*HN4* 📥 **Pleadings, Service of Process**
In the context of notice letters under Ohio Rev. Code Ann. § 2305.11(A), since remedial laws are construed liberally to promote and assist in the attainment of justice, under Ohio law, a reviewing court should look at the contents of the entire letter in determining whether it serves as statutory notice. When the language in an alleged notice letter is ambiguous, the objective circumstances should also be viewed to determine whether the letter should be considered a notice letter. 🔍More like this Headnote
*Shepardize - Narrow by this Headnote* (0)

- Civil Procedure > Attorneys > General Overview
- Governments > Legislation > Statute of Limitations > Extensions & Revivals
View more legal topics
*HN5* 📥 **Civil Procedure, Attorneys**
It is common practice for an attorney to send a letter of representation to his client's adversary in order to protect his client's and his own interests and courts should view initial correspondence from

potential plaintiffs closely to ensure that a plaintiff's rights to redress are not abridged by poor draftsmanship. 🔍More like this Headnote
*Sheardize* - Narrow by this Headnote (0)

# Opinion

Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit judge.

PER CURIAM.

This diversity case involves Ohio's medical malpractice statute of limitations. Ohio Rev. Code Ann. § 2305.11. The specific issue in this case involves the provision of ***HN1***⚓ section 2305.11 which allows for an extension of the limitation period by giving notice of consideration of an action. During the relevant time period, section 2305.11(A) read as follows:

If a written notice, prior to the expiration of time Contained in this division, is given to any person in a medical claim that an individual is *Presently Considering bringing an action* against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given.

Ohio Rev. Code. Ann. § 2305.11 (Page 1981) (emphasis added).

Plaintiffs Karen and Brian Byard appeal from the district court's dismissal of their medical malpractice action brought against defendants Dr. Nicholas Vorys, Infertility and Gynecology, Inc., [*2] and St. Anthony Medical Center. 1⬇ The appellants argue that the district court erred in holding that their action was untimely. For the following reasons we reverse the judgment of the district court.

I. 2⬇

On December 18, 1985, Mrs. Byard consulted Dr. Vorys concerning a progressive endometrial disease. Dr. Vorys recommended operative laparoscopy with laser. On February 19, 1986, Dr. Vorys performed the laparoscopy with laser at St. Anthony Hospital. Mrs. Byard was discharged the same day, and began immediately to experience pain. On February 20, 1986, Mrs. Byard continued to experience severe pain, nausea, dizziness, vomiting, and elevated temperature. She called Dr. Vorys' office seeking help and was advised to apply heat to her chest, continue taking her temperature and continue the antibiotic medication. On February 21, 1986, Mrs. Byard went to the Emergency Department of the Ohio State University Hospitals. She was begun on intravenous hydration with triple antibiotics [*3] and was admitted with a diagnosis of perforated sigmoid colon and bilateral pleural effusions. She underwent an exploratory laparotomy with sigmoid colon resection with end colostomy and mucous fistula with placement of the pelvic drains. She was discharged from the Ohio State Hospital on March 13, 1986. Thereafter, appellants retained attorney Gregg Neal to represent them. On September 9, 1986, Neal sent the following letter to Dr. Vorys:

Please be advised that we been retained by Mr. & Mrs. Byard to pursue a medical negligence case against you regarding your treatment of her February 18, 1986 and thereafter.

May I suggest that you contact your insurance carrier and have them contact me directly so that we may discuss the case in detail. Specifically, it is apparent through a review of the file that your operative procedure resulting in a perforated sigmoid colon and lack of follow-up treatment with regard to her was below the standard of care.

We would like to resolve this matter without litigation and that is why we ask that your insurance carrier contact us directly concerning the case.

After Neal and the appellees' insurance carrier traded correspondence concerning [*4] appellants' allegations, appellants retained different counsel. This counsel sent the following letter to Dr. Vorys on February 4, 1987:

This letter of notice is written pursuant to the provisions of Ohio Revised Code Section 2305.11(A). This is to advise you that Karen Byard is presently considering filing a medical malpractice action against you in relation to professional treatment rendered by you.

Section 2305.11(A) of the Ohio Revised Code grants us an additional 180 days before this action must be filed and we will utilize that time to conduct a comprehensive and confidential investigation of this potential case. This office is very Conscientious in the evaluation of potential medical malpractice cases and we will not become involved in a case unless we are unequivocally convinced of its merit.

Please notify your attorney or insurance carrier of this notice.

On July 31, 1987, appellants filed their complains in district Court. 3 Appellant alleges that Vorys' treatment of her was below the accepted standards of care, skill and diligence for physicians practicing gynecological surgery in the United States. In addition, she claims that Infertility and Gynecology, Inc. breached [*5] its duty of reasonable care to her through its employees, including nurses and Vorys. Likewise, she asserts that the acts of Vorys and nurses and other employees of St. Anthony Medical Center fell within the scope of their authority as servants or agents of St. Anthony Medical Center, and that St. Anthony Medical Center failed to promulgate and enforce safe hospital care to the extent of hospital corporate negligence.

Karen Byard claims that as a result of the appellees' failure to meet their respective standards and duties of care, she suffered personal injuries including severe anxiety, additional surgery, physical pain and suffering and emotional distress.

Brian Byard claims that as a result of appellees' failure to exercise reasonable care he lost the support, services, companionship and consortium of his wife Karen Byard, and that he suffered extreme emotional distress and mental anguish.

On August 21, 1987, defendants Vorys and Infertility and Gynecology, Inc. filed a motion to dismiss under rule 12(b)(6). On March 18, 1988, the [*6] district court entered a memorandum and order dismissing appellants' action as untimely. The court held that the February 4, 1987 letter did not act to extend the one year statute of limitations for malpractice actions, because the September 9, 1986 letter was a notice letter pursuant to section 2305.11(A) 4 Appellants timely appeal.

Appellants assert that the district court erred in its interpretation of section 2305.11(A) and in its determination that the September 9th letter was a proper notice letter. They assert that the letter was a routine letter of representation and that statutory notice was not given until February 4th. We agree.


II.

HN2 In diversity actions, "our responsibility is to determine and apply the law of [the forum state]. [*7] If the law of that state on the subject has not been clearly delineated, it is our duty to forecast as best we can from available sources what the Supreme Court of the state would do if presented with the same issue." *Orfield v. International Harvester Co.,* 535 F.2d 959, 965 (6th Cir. 1976). (per curiam).

HN3 Ohio law provides that: "Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." Ohio Rev. Code Ann. § 1.11 (Page 1984). The Ohio Supreme Court has held that statutes of limitations are remedial in nature. *Gregory v. Flowers,* 32 Ohio St. 2d 48 (1972). In *Rahm v. Hemsoth,* 53 Ohio App. 2d 147 (Lucas County Ct. App. 1976), the court made the following comments concerning the application of statutes of limitation:

A statute of limitation . . . Is remedial in nature and is to be given a liberal construction to permit the deciding of cases upon their merits. R. C. 1.11; *Gregory v. Flowers* (1972), 32 Ohio St. 2d 448; Cf. *Labarbera v. Batsch* (1967), 10 Ohio St. 2d 106, 114 and *Cero Realty Corp. v. American Manufacturers Mutual Ins. Co.* (1960), 171 Ohio St. 82. The liberal  [*8]  construction of a statute requires that 'every reasonable presumption will be indulged and every doubt will be resolved in favor of affording rather than denying a plaintiff his day in court.'

*Id.* at 149.

The Ohio Supreme Court has yet to address this issue and only one Ohio appellate court has directly addressed it. *See Rowe v. Bliss,* 68 Ohio App.2d 247 (Hamilton Cty. Crt. App. 1980) 5

In *Rowe,* the medical malpractice claim accrued on March 11, 1976. On August 11, 1976 the attorneys for the claimant sent a letter which contained the following pertinent language: "As a result of that treatment, Mrs. Rowe has experienced numerous problems,  [*9]  and you may regard this letter as formal notice of a claim against you therefor." *Id.* at 248. On February 28, 1977 a letter containing the following language was sent: "Pursuant to amended Ohio Revised Code Section 2305.11(A), notice is hereby given that Mrs. Corrine Jean Rowe is presently considering bringing an action against you, relating to professional services provided to her." *Id.* Mrs. Rowe filed her complaint on August 25, 1977. The trial court dismissed the complaint as untimely, finding that the August 11th letter was written notice that Rowe was presently considering bringing an action.

The court of appeals reversed. The court noted that the statute required the claimant to give notice that an action is presently being considered and that the action relates to professional services provided to that individual. The court distinguished the words "claim" and action" and held that the letter which gave notice of a "claim" did not satisfy the requirements of the statute because it did not give notice that the claimant was considering an "action"

The district court in the instant case focused on appellant's attorney's use of the word "case" in the first letter, and found  [*10]  that the term is synonymous with the statutory term "action" in holding that the September 9th letter was a notice letter. Although the district court's analysis is sound if one focuses on a single word in appellant's letter - in this case the word "case" - we do not agree with this approach. **HN4** Since remedial laws are construed liberally to promote and assist in the attainment of justice we believe that under Ohio law a reviewing court should look at the contents of the entire letter in determining whether it serves as statutory notice 6 We also believe that when the language in an alleged notice letter is ambiguous, the objective circumstances should also be viewed to determine whether the letter should be considered a notice letter. *See e.g. Rowe,* 68 Ohio App. 2d 254 (Palmer, J. concurring) (fact that letter was sent five months after accrual makes letter a nullity having no legal effect or significance).

 [*11]  In this case, appellants' first counsel sent a letter which "advised" appellee that he had been retained to pursue a claim. appellants' second counsel sent a letter which tracked the language of the statute. If no statutory notice had been sent in this case, the statute of limitations would have expired on February 21, 1987. If the first letter was viewed as a statutory notice letter, the statute of limitations would have expired on March 8, 1987. Finally, if the first letter was not a statutory notice letter the second letter would have acted to extend the statute of limitations which would have expired on August 3, 1987. We note at the outset that appellant's first letter does not use the words "action" or "notice" and merely "advises" defendant that appellants had retained counsel to "pursue a medical negligence case." **HN5** The court notes that it is common Practice for an attorney to send a letter of representation to his client's adversary in order to protect his client's and his own interests and believes that Courts should view initial correspondence from Potential plaintiffs closely to ensure that a plaintiff's rights to redress are not abridged by poor draftsmanship Given  [*12]  the liberal construction mandated by section 1.11, we believe the September 9th letter was only a letter of

representation and was not a notice letter that extended the statute of limitations as provided by section 2305.11(A). Our conclusion is bolstered by the fact that the September 9th letter was sent only six and one half months after appellants' action accrued, and would only have extended the running of the statute of limitations by approximately two weeks. Had this letter been more explicit, or had it provided a greater extension of the statute of limitations we may have reached a different result But that is not the case before us.

Accordingly, viewing the September 9th letter in its entirety and Considering the timing of its delivery we hold that the September 9th letter was not a statutory notice letter, and that the February 4th letter was effective to extend the statute of limitations. Therefore, appellant's Complaint was not untimely.

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for further Proceedings.

### Footnotes

-  1↑

  Defendant St. Anthony Medical Center is not a party to this appeal.

- 2↑

  Since the district court granted defendants' motion to dismiss, the facts concerning appellants' claims are taken from their complaint.

- 3↑

  Jurisdiction was based on diversity of Citizenship, The appellants were residents of West Virginia while the appellees were residents of Ohio.

- 4↑

  Under this ruling the statute of limitations would run 180 days after September 9th or March 8, 1987. *See Glenboski v. St. Alexis Hospital,* 65 Ohio App.2d 165, 1168 (Cuyahoga Cty. Crt. App. 1979) ("If written notice is given less than 180 days prior to the end of the one year period from the date of accrual of the cause of action, then the extension period of 180 days from the date of the notice will control the filing of the complaint.")

- 5↑

  The appellant cites to *Nipps v. Doctors Hospital North,* No. 77AP-943 (Franklin County Court of Appeals May 16, 1978). This brief decision also involved a situation where two notices were sent by the claimant The court of appeals found that the second notice was effective because the first notice may not have been sufficient. However, the court does not give the language of either notice nor does it go into any analysis. Given the Court's lack of analysis, the *Nipps* decision is of little guidance in the instant case.

- 6↑

  Although the Rowe court analyzed the single word claim in the letter in question, this does not conflict with our view of the law since the court was faced with a letter which was expressly labelled a formal notice, thereby making the word claim the determinative word in the letter.